IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. JAMES H. WINER,                          )
        Plaintiff,                      )
                                  )
        vs.                             )      Civil Action No. 12-934
                                  )      Judge Bissoon
SENIOR LIVING GUIDE, INC., individually      )      Magistrate Judge Mitchell
and d/b/a "SLG WEB DESIGN," et al.,          )
        Defendants.                     )

REPORT AND RECOMMENDATION

I.    <u>Recommendation</u>

It is respectfully recommended that the motion to dismiss filed on behalf of defendant

Paul J. DePaula (ECF No. 10) be granted with respect to Counts V, X and XI and denied with

respect to Counts I, II, III, IV, VI, VII, VIII, IX and XII.  It is further that the motion to dismiss

filed on behalf of defendants Patrick DePaula, S.L.G., Inc. and Senior Living Guide, Inc. (ECF

No. 12) be granted with respect to Counts V, X and XI and denied with respect to Counts I, II,

III, IV, VI, VII, VIII, IX and XII.

II.    <u>Report</u>

Plaintiff, Dr. James H. Winer, brings this action alleging claims under the

Anticybersquatting Consumer Protection Act, the Lanham Act and Pennsylvania law, arising out

of the unauthorized registration of a domain name confusingly similar to his own which portrays

him in a negative light.  He names as defendants Senior Living Guide, Inc., individually and

doing business as "SLG Web Design" and "S.L.G, Inc.," S.L.G. Inc. individually and doing

business as "SLG Web Design" (together, "SLG"); Patrick DePaula; Paul DePaula; and Sean

Flanagan.

Currently pending before the Court are two motions to dismiss, one filed by Paul

DePaula and the other by all of the remaining defendants except Sean Flanagan. For the reasons that follow, both motions should be granted in part and denied in part.

Facts

Plaintiff is the owner of the trade name and trademarks/service marks: "Dr. Winer," "Dr. James Winer," "Dr. Winer's Wellness Center," "Pain Release Clinic," and "Winer Wellness Center" ("the Marks"), which he uses in relation to medical services and retail sales of various health foods, juicers, nutritional, herbal and homeopathic supplements, books and videos. (Compl. ¶ 11.) He alleges that he has developed a well-known nationwide reputation for the Marks in conjunction with providing products and services in the field of natural health and medicine. (Compl. ¶ 12.)

Plaintiff alleges that he has established and enjoys, at great cost and effort, an excellent reputation for quality products and services. He indicates that he has appeared on thousands of radio shows, and has published articles and a "Basic Nutrition Handbook" (first published 1977) under the name "James Winer." Plaintiff has also been referred to in magazines and newspapers as "James Winer" and/or "Dr. James Winer." Plaintiff alleges that he has acquired strong regional and national recognition under this name. (Compl. ¶¶ 13-14.)

Plaintiff has used the Marks to identify his products and services to distinguish them from those provided by others, by, among other things, prominently displaying the Marks on or associated with marketing materials, advertisements, and his website at "drjameswiner.com." He alleges that he has used the Marks commercially in interstate commerce, beginning at least as early as the year 1973 in conjunction with his products and services. (Compl. ¶¶ 15-16.)

Plaintiff contends that his various Marks, through extensive marketing and advertising for the past thirty-nine years, have achieved a secondary and distinctive meaning to consumers in the

relevant trade area.  He avers that Defendants' use of the Marks will cause a likelihood of confusion in the market for consumers and the public at large.  (Compl. ¶¶ 17-18.)

Defendants Hired to Design Website

Plaintiff hired the Defendants to build a website for his business.  He alleges that, at the time of hiring, Defendants were made aware that the work had to be completed in a timely fashion as he was launching on his website (www.drjameswiner.com) a special marketing promotion called, "Winer Wellness Week" in September 2011.  In addition, Plaintiff was promised and agreed upon a greatly expanded webstore inventory.  (Compl. ¶¶ 19-20.)

On or about July 9, 2011, the parties signed a written agreement for those services. (Compl. ¶ 21.)  Defendants have attached this agreement to the brief in support of their motions to dismiss.  (ECF No. 25 Ex. A.)  They note that the fee for the web design services was $8,480.00, with half ($4,240.00) paid up front and that the agreement contained a clause directing all disputes not otherwise resolved to arbitration.  (Id. §§ I, VI.)

Plaintiff alleges that, between July 13, 2011 and August 2, 2011, there was no apparent activity in regards to the website's development and that, when asked, Defendants could not provide Plaintiff with any evidence of any work on the new website.  He further indicates that, on or about August 18, 2011, he notified the Defendants by email that the images that Defendants submitted to Plaintiff by email for inclusion in the website were inadequate and inappropriate for use on the website.  (Compl. ¶¶ 22-23.)

Plaintiff alleges that, on or about August 22, 2011, he contacted the Defendants regarding the lack of progress of the website and requested a meeting. Plaintiff's chief concern was that the delays in performing the work would ultimately delay launching "Winer Wellness Week" and the expanded webstore inventory with a resulting loss of profits.  On or about August 25, 2011,

Plaintiff notified the Defendants that he was denied access to the site and requested that the website be put back up. He repeated his request for a meeting. (Compl. ¶¶ 24-25.)

Plaintiff states that, at some point in late August 2011, Defendants represented the website as "finished," which was a representation that astonished him as he had had no interaction with them regarding the content that was supposed to be included in the website, nor approval of any said content. At the time of hiring, there had been a discussion regarding a list of fifty health conditions along with the respective medical approach to the conditions compared to Dr. Winer's approach. The website did not contain the list, nor did it contain any office or personnel photographs, customer testimonials, health articles, logo design, and biographies of the respective practitioners and doctors. (Compl. ¶ 26.)

He states that Defendants refused to show him and/or otherwise allow him access to the alleged finished site until they were paid an additional sum of $4,240.00, a demand that he characterizes as unwarranted considering Defendants' failure to perform any work on the matter. Plaintiff states that, because Defendants were unwilling to comply with his timely and reasonable requests for information and access to his website, he refused to make any payment to Defendants and was left with no choice but to engage the assistance of other professionals to construct and/or otherwise complete the website. (Compl. ¶¶ 27-28.)

Defendants Register "doctorjameswiner.com"

Plaintiff alleges that, on or about September 7, 2011, Defendants, unbeknownst to him, wantonly, intentionally, recklessly, and/or maliciously registered the domain name "doctorjameswiner.com". Plaintiff indicates that his official website is "drjameswiner.com," which was registered on November 24, 2000. (Compl. ¶¶ 29-30.)

The site Defendants registered includes a link created by Defendants to an

"Amazon.com" page listing which advertises competing wellness products. Plaintiff alleges that Defendants had no reason or justification – other than to siphon away business from him – to include the Amazon.com link on this site. He notes that the site also misrepresents that it is the "Official Site of Dr. James H. Winer." (Compl. ¶¶ 31-33.)[1]

The site also includes the following statement: "Dr. James Winer – Winer Wellness Center – Website Completed August 25, 2011 – Currently Awaiting Payment" along with an unflattering photo of the Plaintiff, which was taken at a meeting with the Defendants, without his knowledge or acquiescence. (Compl. ¶ 34.)

On May 25, 2012, Plaintiff served Defendants with a cease and desist letter, demanding the unconditional removal of the malicious website and transfer of the domain name as well as payment of damages. He alleges that Defendants expected or should have reasonably expected that their acts including the aforementioned acts and those set forth herein, to have consequence in this Commonwealth, nationally and internationally by the intentional damage to Plaintiff. Defendants have at all times relevant to the acts set forth hereinabove had actual and constructive knowledge of the rights of Plaintiff, but have proceeded in disregard thereof. He further avers that, unless Defendants are restrained and enjoined from marketing, advertising and/or otherwise using the Marks, their conduct will continue to injure the reputation of Plaintiff and cause damage to Plaintiff's economic standing. (Compl. ¶¶ 35-37.)

Procedural History

Plaintiff filed the complaint on July 6, 2012 (ECF No. 1). Federal question jurisdiction is

---

[1] Defendants purported to attach a printout of the website to their brief. (ECF No. 25 Ex. D.) However, as Plaintiff notes, this printout cuts off the bottom portion of the screen, which contained the statement that it was "The Official Site of James H. Winer." As explained below, that statement is highly significant in this case. Counsel is warned that such tactics will not be tolerated. On November 19, 2012, Plaintiff supplied the Court with a color internet screen shot that accurately portrays the entire screen.

invoked for the Lanham Act claims, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a-b), and supplemental jurisdiction is invoked for the state law claims, 28 U.S.C. § 1367. Count I alleges a claim of cybersquatting in violation of 15 U.S.C. § 1125(d). Count II alleges a claim of trademark infringement under Pennsylvania common law. Count III alleges a claim of false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Count IV alleges a claim of false description and representation in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Count V alleges a claim of tortious interference with existing and prospective contractual relations. Count VI alleges a claim of invasion of privacy by intrusion upon seclusion. Count VII alleges a claim of invasion of privacy – false light. Count VIII alleges a claim of appropriation of likeness. Count IX alleges a claim of defamation and/or trade disparagement. Count X alleges a claim of intentional infliction of emotional distress. Count XI alleges a claim of unjust enrichment. Count XII alleges a Lanham Act claim of dilution by tarnishment, 15 U.S.C. § 1125(c).

On September 20, 2012, the moving defendants filed the motions at issue (ECF Nos. 10, 12), along with briefs in support thereof (ECF Nos. 11, 13). On October 8, 2012, Plaintiff filed a motion (ECF No. 17) to strike the affidavits that the defendants had included with the motions and the motion to strike was granted on October 16, 2012 (ECF No. 23). On October 25, 2012, Defendants filed one consolidated amended brief in support of their motions (ECF No. 25), and on November 16, 2012, Plaintiff filed a response in opposition (ECF No. 28).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual

allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007). Thus, the contract between the parties, which is referenced in Plaintiff's complaint and is attached to the brief in support of the motions to dismiss, the page from the Pennsylvania

Department of State and the copy of the registration of doctorjameswiner.com may be considered without converting the motion into a motion for summary judgment.

Defendants argue that this case is really a breach of contract dispute that should be submitted to arbitration pursuant to the agreement and that all claim against Paul DePaula should be dismissed because he is not an officer or director of SLG and had no part in the actions raised in the complaint.  In addition, they contend that: 1) Count I (cybersquatting) should be dismissed because Plaintiff has not alleged that Defendants profited from registering the domain name; 2) the Lanham Act claims in Count III (false designation of origin), Count IV (false description and representation) and Count XII (dilution by tarnishment) should be dismissed because the complaint does not allege that the domain name was used "in commerce" or that there is a likelihood of confusion; 3) Count II (trademark infringement under Pennsylvania common law) should be dismissed for the same reasons as the Lanham Act claims; 4) Count V (tortious interference with existing and prospective contractual relations) should be dismissed because the complaint fails to point to specific contracts with which defendants interfered and fails to allege an absence of privilege; 5) Count VI (intrusion upon seclusion) should be dismissed because the photo of Plaintiff was taken in a meeting where he had the door open and the photo would not be substantially and highly offensive to a reasonable person; 6) Count VII (false light) should be dismissed because the information that the website was "awaiting payment" was true and the photo would not be highly offensive to a reasonable person; 7) Count VII (appropriation of likeness) should be dismissed because defendants obtained no benefit; 8) Count IX (defamation and/or trade disparagement) should be dismissed because the statement was not defamatory and was true; 9) Count X (intentional infliction of emotional distress) should be dismissed because the allegations fail to rise to the level of outrageousness for which courts have recognized such a

claim; and 10) Count XI (unjust enrichment) should be dismissed because Plaintiff conferred no benefits on Defendants.

Plaintiff responds that Paul DePaula signed the agreement on behalf of SLG and he contends that it was Paul DePaula who took the offending photo, therefore he is involved in the events underlying this case. He further argues that: 1) he has alleged that Defendants profited from registering the domain name, both by attempting to coerce him to pay additional funds and by diverting customers (possibly with a reference fee) to Amazon.com, where they could purchase competing products; 2) he has alleged that they used the mark "in commerce" and likelihood of confusion is an issue of fact; 3) he has alleged that Defendants tortiously interfered with prospective customers over the internet; 4) whether the meeting was in a "public place" and whether the photo would be highly offensive to a reasonable person are factual issues; 5) he has alleged that Defendants appropriated his name to their "use" even if not to their "benefit" and therefore he has stated a claim for misappropriation of likeness; and 6) he has properly pleaded claims for defamation and trade disparagement because the website falsely claims to be his "official" site and it implies that he is a neglectful and irresponsible person, and truth is a defense that cannot be determined in the context of a motion to dismiss. He has not responded to Defendants' arguments concerning his claims for intentional infliction of emotional distress and unjust enrichment.

Nature of the Case

Defendants argue preliminarily that this case is really a breach of contract action which, pursuant to the terms of the agreement, should be submitted to arbitration. However, even a cursory review of the complaint is sufficient to demonstrate that this argument is without merit. Plaintiff is not raising claims arising out of Defendants' failure to complete their work on his

website.  Indeed, his prayer for relief does not even request damages arising out of that event.

Rather, the claims herein clearly arise out of Defendants' unauthorized registration of

doctorjameswiner.com and the relief he seeks includes: transferring the domain name to him,

enjoining them from using his Marks and the infringing domain name, ordering judgment to

disgorge any profits Defendants received by their conduct, and ordering damages and attorney

fees under the Lanham Act.  Therefore, this argument should be rejected.

<u>Claims Against Paul DePaula</u>

Defendants argue that all claims against Paul DePaula should be dismissed because he is

not an officer or director of SLG and he did not perform any of the acts alleged herein: he did not

register doctorjameswiner.com, he did not tortiously interfere with Plaintiff's contracts, and he

did not publicize the information on the website.   They have attached a printout from the

Pennsylvania Department of State which indicates that the officers of SLG are Patrick D.

DePaula (president) and Patrick J. DePaula (vice president, secretary and treasurer).  (ECF No.

25 Ex. B.)[2]  They have also attached a printout of the registration of "doctorjameswiner.com"

which indicates that it was registered by Patrick DePaula and Sean Flanagan.  (ECF No. 25 Ex.

C.)

As Plaintiff correctly notes in response, however, the agreement (which Defendants have

submitted into the record) was signed by "Paul J. DePaula, Sr." in his capacity as "vice

president" of SLG.  (ECF No. 25 Ex. A at 2.)  Thus, despite the listing of the Department of

State, Paul DePaula appears to have been involved in the events underlying this complaint.

Moreover, he argues that Paul DePaula was the individual who took the unflattering photo

featured on the website.  Therefore, this argument should be rejected.

_____

[2] The complaint alleges that Patrick DePaula is the president of SLG (Compl. ¶ 4) and thus it
would appear to be Patrick D. DePaula who is named as a defendant herein.

<u>Cybersquatting Claim</u>

In Count I, Plaintiff alleges a claim of cybersquatting. This statute provides that:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that--
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).[3] To state a claim, a plaintiff must allege that: 1) his mark is a distinctive or famous mark entitled to protection; 2) the defendant's domain name is "identical or confusingly similar to" plaintiff's mark; and 3) defendant registered the domain name with the bad faith intent to profit from it. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 482 (3d Cir. 2001) (citations omitted).

Defendants argue that Plaintiff has not alleged that they had "a bad faith intent to profit from" his Marks and therefore he cannot state a claim under this section. Plaintiff responds that he has alleged that Defendants registered a web address confusingly similar to his own, that the website tarnishes and disparages his trade name with intent to demand additional money from

---

[3] Prohibitions against cybersquatting were added to the Lanham Act by the Anticybersquatting Consumer Protection Act, Pub. L. 106-113, 113 Stat. 1501 (1999). It became effective on November 29, 1999.

him, and that it includes a link to competing wellness products as a means to further motivate

and bully him into handing over additional funds.

The statute provides that:

In determining whether a person has a bad faith intent described under
subparagraph (A), a court may consider factors such as, but not limited to--

(I) the trademark or other intellectual property rights of the person, if any, in the
domain name;

(II) the extent to which the domain name consists of the legal name of the person
or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the
bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site
accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location
to a site accessible under the domain name that could harm the goodwill
represented by the mark, either for commercial gain or with the intent to tarnish or
disparage the mark, by creating a likelihood of confusion as to the source,
sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to
the mark owner or any third party for financial gain without having used, or
having an intent to use, the domain name in the bona fide offering of any goods or
services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information
when applying for the registration of the domain name, the person's intentional
failure to maintain accurate contact information, or the person's prior conduct
indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the
person knows are identical or confusingly similar to marks of others that are
distinctive at the time of registration of such domain names, or dilutive of famous
marks of others that are famous at the time of registration of such domain names,
without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name
registration is or is not distinctive and famous within the meaning of subsection
(c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

Plaintiff points to the following factors: 1) factor I, because Defendants have no intellectual property rights in Plaintiff's trade name, and he registered drjameswiner.com eleven years before; 2) factor II, because the domain name "doctorjameswiner.com" contains Plaintiff's legal name and not the name of any of the Defendants; 3) factor III, because Defendants registered the name on September 7, 2011, after completing work on Plaintiff's official website, thus they had no prior use of the domain name in connection with the bona fide offering of any goods or services; and 4) factor V, because the link to Amazon.com diverts consumers from the his on-line location and tarnishes and disparages Plaintiff's Marks and might generate reference fees for Defendants. In addition, and because the list of factors is non-exhaustive, Plaintiff notes that: 1) the site contains the disparaging phrase "Website Completed August 25, 2001 Currently Awaiting Payment"; 2) the site falsely represents that it is the "Official Site of Dr. James H. Winer"; 3) the site contains a "truly deplorable" picture of Plaintiff slouching in a chair, which was taken without his knowledge or acquiescence; and 4) Defendants have also used Plaintiff's distinctive Marks to purchase advertisements with Google's AdWords Service, such that any search for Dr. James Winer will result in Defendants' website being at the top of the search results. (Compl. ¶ 57.) Finally, Plaintiff argues that he has alleged that Defendants were demanding that he pay an additional sum of $4,240.00 for work on the drjameswiner.com website, and thus his allegations can be reasonably read as pleading that the registration was done with a bad faith intent to profit therefrom.

Upon review, the Court concludes that Plaintiff has cited multiple factors from the statute and other factors not listed therein that are sufficient to state a claim that Defendants acted with a bad faith intent to profit from his Marks, by attempting to coerce him to pay $4,240.00 and/or by

diverting the public to Amazon.com, which sells products that compete with his. Specifically, they have no intellectual property rights in "doctorjameswiner.com" which is in fact Plaintiff's name (factors I and II), it was registered after they performed work on his official website (factor III), and the site diverts consumers to Amazon.com where consumers can buy products that compete with Plaintiff's products (factor V) and might generate reference fees for Defendants. See Shields, 254 F.3d at 485 (when Zuccarini registered five websites that were variations on joecartoon.com, a domain name used by Shields for several years based on the name "Joe Cartoon" that he had used for 15 years, in order to divert consumers from Shields' own website, his conduct satisfied seven of the factors). In addition, Plaintiff points to other factors that would support a finding of bad faith, namely the disparaging phrase that he had not paid for the website, the unflattering picture of Plaintiff slouching in a chair (taken without his knowledge or acquiescence), the purchase of Google AdWords such that this site comes up first in a search result, and the inference that the site was registered for the purpose of coercing him to pay additional funds. See Faegre & Benson, LLP v. Purdy, 447 F. Supp. 2d 1008, 1014 (D. Minn. 2006) (defendant demonstrated bad faith in registering domain names by, inter alia, offering to stop "appropriating the names of Plaintiffs and Faegre attorneys, on the condition that Faegre stop funding Planned Parenthood or that it donate money to organizations opposing abortion.") Therefore, with respect to Count I, the motions to dismiss should be denied.

Lanham Act Claims

Plaintiff alleges three additional claims under the Lanham Act, namely: false designation of origin (Count III), false description and representation (Count IV) and dilution by tarnishment (Count XII). In addition, he alleges a claim for trademark infringement under Pennsylvania common law (Count II), which follows Lanham Act standards. Defendants argue that all of

these claims should be dismissed because Plaintiff does not allege that they used the domain name "in commerce" or that there was a likelihood of confusion or that they profited from it. Plaintiff responds that the scope of "in commerce" is broad and that establishing a website on the internet is sufficient to satisfy it, that he has pleaded that there was a likelihood of confusion and that the domain name was registered "for profit."

The Lanham Act provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Act further provides that:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

Defendants argue that Plaintiff has not alleged that the domain name was used "in commerce." Plaintiff has cited a case which states that: "The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the

Lanham Act's 'in commerce' requirement." Planned Parenthood Fed. of America, Inc. v. Bucci, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997) (citing Intermatic v. Toeppen, 947 F. Supp. 1227, 1239 (N.D. Ill. 1996)).  Courts have also held that "the use of a trademark to draw consumers to a particular website not belonging to the trademark holder constitutes use in commerce under the Lanham Act." Transamerica Corp. v. Moniker Online Servs., LLC, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) (citing Vulcan Golf, LLC v. Google, Inc., 552 F. Supp. 2d 752, 760 (N.D. Ill. 2008) (footnote omitted).  Defendants have not cited any authority to the contrary.

Defendants also contend that Plaintiff has failed to plead sufficient facts that the site was used in connection with the sale, preparing for sale, distribution or advertising goods and services under § 1125(a) or that it was used commercially under § 1125(c).  Plaintiff responds that Defendants need not actually have sold or advertised goods or services on the website, so long as they prevented users from obtaining or using Plaintiff's own goods or services.  See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 365 (4th Cir. 2001); OBH v. Spotlight Magazine, 86 F. Supp. 2d 176, 183 (W.D.N.Y. 2000).  Plaintiff has alleged that the website diverted customers away from his own website and to Amazon.com, where they could buy products that competed with his own.  That is sufficient.  Therefore, their argument should be rejected.

Defendants also argue that Plaintiff has failed to plead likelihood of confusion, citing Interpace Corp. v. Lapp, 721 F.2d 460, 463 (3d Cir. 1983), and the ten factors identified therein.  However, "likelihood of confusion is a factual issue," Green v. Fornario, 486 F.3d 100, 106 (3d Cir. 2007), and Lapp relied upon the district court's "findings of fact" to determine the issue.  Plaintiff has pleaded the following Lapp factors: identical marks, the distinctiveness of his

Marks, the bad faith intent of the Defendants in using the marks and the marketing of competing health products through identical channels of trade (an internet website with an identical or confusingly similar name). This is sufficient at this stage of the proceedings.

Finally, Defendants argue that Plaintiff has failed to allege that they registered the domain name "for profit." However, Plaintiff has alleged both that Defendants registered the name to attempt to coerce him to pay additional money and that the link to Amazon.com would divert customers to a site where they could buy products which compete with his own and might generate reference fees for Defendants. Therefore, with respect to Counts III, IV and XII, the motions to dismiss should be denied. In addition, the motions to dismiss should be denied with respect to Count II, which alleges a trademark infringement claim under Pennsylvania common law, because such claims follow Lanham Act analysis. See Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999). The sole distinction is that the state law claim does not require an effect on interstate commerce. See Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003).

Tortious Interference with Contractual Relations

In Count V, Plaintiff alleges a claim for tortious interference with existing or prospective contractual relations. Defendants contend that Plaintiff cannot state either kind of claim because he has not identified the contracts with which they allegedly interfered, because corporate entities and their agents are not distinct parties for contracting purposes and because he has failed to plead the absence of privilege or justification. Plaintiff concedes in his response that "the proper tort here is for Tortious Interference with Prospective Relations, namely, the online potential customers, including repeat customers, looking to purchase products from Plaintiff and/or utilize his medical services." (ECF No. 28 at 10.) Therefore, the Court need only address

a claim of tortious interference with prospective contractual relations.

The Court of Appeals has indicated that:

> Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted). Further:

> In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively "reasonable likelihood or probability" that the contemplated contract would have materialized absent the defendant's interference. See Glenn v. Point Park Coll., 441 Pa. 474, 272 A.2d 895, 898–99 (1971); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir.1997). A "reasonable likelihood" of occurrence is something less than a contractual right but more than a mere hope that there will be a future contract. Phillips v. Selig, 959 A.2d 420, 428 (Pa. Super. Ct. 2008). Furthermore, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship. Id. at 429.

Id. at 213.

Thus, vague references to lost "potential customers" are insufficient to satisfy this standard. Plaintiff has not pointed to specific prospective contractual relationships with which Defendants interfered.[4] Therefore, with respect to Count V, the motions to dismiss should be granted.

<u>Invasion of Privacy Claims</u>

Plaintiff alleges three invasion of privacy claims: intrusion upon seclusion (Count VI),

---

[4] The Court need not address Defendants' alternative arguments.

false light (Count VII) and appropriation of likeness (Count VIII). Defendants argue that Plaintiff cannot state claims for either false light or intrusion upon seclusion invasion of privacy because the meeting at which the photo was taken was not "private" and because the intrusion would not be highly offensive to a reasonable person. They further contend that Plaintiff has failed to plead that they obtained a benefit and therefore he cannot maintain a claim of appropriation of likeness. Plaintiff responds that these are issues of fact that cannot be decided in the context of a motion to dismiss.

As the Pennsylvania Supreme Court has observed: "the Second Restatement of Torts enumerates four theories that would constitute invasion of privacy." Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 379 (Pa. 2009). They are: intrusion upon seclusion, § 652B, appropriation of name or likeness, § 652C, publicity given to private life, § 652D, and publicity placing person in false light, § 652E. Plaintiff invokes three of the four varieties of this tort.

Intrusion upon Seclusion

The Restatement indicates that: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B.

Defendants argue that the meeting at which the photo was taken was not private. Actionable intrusion upon seclusion does not apply to matters that occur in a public place or a place otherwise open to the public eye. There is no liability "for observing [ ] or even taking [a] photograph while [a person] is walking on the public highway, since he is not then in seclusion, and his appearance in public is open to the public eye." Restatement, cmt. c. Plaintiff responds that whether the meeting in this case was private is disputed.

Defendants cite <u>Borton v. Unisys Corp.</u>, 1991 WL 915 (E.D. Pa. Jan. 4, 1991). In that case, an employee was photographed at a meeting when another employee cupped his hands over her breasts and the photo was shown at a company slideshow. The court determined that she could not state a claim for intrusion into seclusion aspect of invasion of privacy because the incident occurred in a "public place" and that, to the extent the tort exists in that scenario, it must arise from a photograph taken of a part of a person's body which he or she would ordinarily not reveal to the public. <u>Id.</u> at *9. However, in this case, the meeting (which took place in Plaintiff's office) is alleged to have involved only Plaintiff and Defendants, not many Unisys employees, and the photo was not shown just to Defendants, but made available to the public at large over the internet. Whether the meeting was in a public place presents an issue of fact, which cannot be resolved in the context of a motion to dismiss. Defendants also argue that taking photos was part of the contract between the parties, but Plaintiff has alleged that this photo (in which he is seen slouching in a chair) was taken without his knowledge or authorization.

Similarly, Defendants argue that the intrusion would not be highly offensive to a reasonable person, but Plaintiff has pleaded that he suffered mental anguish and shame due to the public embarrassment of its publication. Defendants cite a number of cases in which summary judgment was entered for the defendant, but no case in which a motion to dismiss was granted on this basis. Again, this issue cannot be resolved on a motion to dismiss. Therefore, with respect to Count VI, the motions to dismiss should be denied.

<u>False Light</u>

The Restatement of Torts indicates that:

One who gives publicity to a matter concerning another that places the other
before the public in a false light is subject to liability to the other for invasion of
his privacy, if

20

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.  Pennsylvania law holds that:

In contradistinction to invasion of privacy for publicity given to private life, false light does not require proof that the matter giving rise to the plaintiff's claim be restricted to one of private concern. Indeed, "recovery in tort for disclosure of public, as well as private, facts, ... is warranted to protect a claimant's right to be free from being placed in a false light ... which may be caused by the [in]discriminate publication of such facts."

Krajewski v. Gusoff, 53 A.3d 793, 806 (Pa. Super. 2012) (quoting Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1189 (Pa. Super. 1988) (footnote and citation omitted).

Plaintiff notes that he has pleaded that Defendants took an unflattering photo of him and posted it on website which they falsely claimed to be his official site next to the following phrase "Dr. James Winer – Winer Wellness Center – Website Completed August 25, 2011 – Currently Awaiting Payment."  (Compl. ¶ 34.)  The totality of the circumstances could be found by a reasonable person to portray Plaintiff as a slovenly, unprofessional person who does not pay for services he has ordered.  This is sufficient to state a claim for false light invasion of privacy.

Defendants also assert that the statement "Website Completed August 25, 2011 Currently Awaiting Payment" is true and thus a complete defense to liability.  This argument is, at the very least, misleading.  Plaintiff entered into an agreement with Defendants for them to develop the website drjameswiner.com, which would, inter alia, allow customers to view and purchase his products.  He did not enter into an agreement for them to create doctorjameswiner.com, a website featuring an unauthorized and unflattering photo of him, no ability to purchase his products and a link to Amazon.com, where customers could purchase products that would compete with his own.  The statement that doctorjameswiner.com was "completed and awaiting

21

payment" is not a true statement.  In addition, doctorjameswiner.com falsely indicated that it was Plaintiff's official website.  Therefore, with respect to Count VII, the motions to dismiss should be denied.

Appropriation of Likeness

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."  Restatement (Second) of Torts § 652C.  "To be liable for appropriation under the Restatement (Second) of Torts, 'defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness'"  AFL Philadelphia LLC v. Krause, 639 F. Supp. 2d 512, 530 (E.D. Pa. 2009) (citing Restatement, cmt. c.)  Plaintiff argues that Defendants, in arguing that they did not "benefit" from the website, have ignored the disjunctive phrase "use or benefit" and that appropriation for one's own use, even without perceived benefit, is sufficient.  This tort "is not limited to commercial appropriation" and "applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one."  Restatement, cmt. b.

Plaintiff argues that Defendants may have benefitted monetarily from the referral link to Amazon.com, but that discovery into this matter is required.  Moreover, as indicated above, even if he could not allege that they "benefited" from the website, he has alleged that they "used" it. Therefore, with respect to Count VIII, the motions to dismiss should be denied.

Defamation or Trade Disparagement

In Count IX, Plaintiff alleges a claim of defamation or trade disparagement.  Defendants argue that he cannot maintain this claim because the statements on the website were not

defamatory and were, in fact, true. Plaintiff responds that truth is a defense, not an issue to be decided on a motion to dismiss.

The Court of Appeals has observed that:

Under Pennsylvania law, a defamation plaintiff bears the burden to show:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

42 Pa. Cons. Stat. Ann. § 8343(a) (1998). Under Pennsylvania law, the court must decide at the outset whether a statement is capable of defamatory meaning. See Thomas Merton Ctr. v. Rockwell International Corp., 497 Pa. 460, 442 A.2d 213, 215-16 (Pa. 1981). If the court determines that the statement is capable of a defamatory meaning, the jury must then decide whether the recipient actually understood the statement to be defamatory. See Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A.2d 899, 904 (Pa. 1971).

Tucker v. Fischbein, 237 F.3d 275, 281-82 (3d Cir. 2001). Truth of the defamatory communication is a defense, for which the burden falls on the defendant. 42 Pa. C.S. § 8343(b)(1).

Defendants assert that the statement "Website Completed August 25, 2011 Currently Awaiting Payment" is true. As explained above, this argument is, at the very least, misleading and depends upon a defense which is premature to resolve in the context of a motion to dismiss. In addition, the statement that doctorjameswiner.com is Plaintiff's official website is absolutely not true. Therefore, with respect to Count IX, the motions to dismiss should be denied.

Intentional Infliction of Emotional Distress

In Count X, Plaintiff alleges a claim of intentional infliction of emotional distress.

Defendants argue that he has not alleged behavior "outrageous" enough to invoke this tort. Plaintiff has not responded to this argument.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). Although the Pennsylvania Supreme Court has never expressly adopted this section of the Restatement, it has pointed to the Restatement's definition to describe the level of behavior necessary to maintain such a claim. Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998). The court observed that:

> courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven. Indeed our Superior Court has noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Buczek v. First National Bank of Mifflintown, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

Id. at 753-54.

Defendants note that only a few cases have presented behavior so "outrageous" that courts have been willing to allow a claim for intentional infliction of emotional distress. See Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (defendant stuck and killed the plaintiffs' son with a car, failed to seek medical attention, and buried the body in a field); Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. 1981) (plaintiff was involved in a fight which resulted in the other participant receiving a broken jaw that required surgery, but the person died during

surgery due to hospital negligence; the hospital falsified the records and the plaintiff was charged with murder); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (team physician falsely reported to the media that football player had a fatal disease).

The allegations of the complaint do not rise to the level of outrageous behavior that courts have found to state a claim for intentional infliction of emotional distress. Therefore, with respect to Count X, the motions to dismiss should be granted.

Unjust Enrichment

In Count XI, Plaintiff alleges a claim of unjust enrichment. Defendants argue that Plaintiff has failed to allege that they obtained a benefit. Plaintiff has not responded to this argument.

The Court of Appeals has observed that:

The elements of unjust enrichment under Pennsylvania law have been defined as follows:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (citing Limbach Co. LLC v. City of Phila., 905 A.2d 567, 575 (Pa. Commw. 2006)). "Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993).

With respect to this tort, it is clear that the plaintiff must confer a benefit on the defendant and Plaintiff has not alleged that he did so. Therefore, with respect to Count XI, the motions to dismiss should be granted.

For these reasons, it is recommended that the motion to dismiss filed on behalf of defendant Paul J. DePaula (ECF No. 10) be granted with respect to Counts V, X and XI and denied with respect to Counts I, II, III, IV, VI, VII, VIII, IX and XII. It is further that the motion to dismiss filed on behalf of defendants Patrick DePaula, S.L.G., Inc. and Senior Living Guide, Inc. (ECF No. 12) be granted with respect to Counts V, X and XI and denied with respect to Counts I, II, III, IV, VI, VII, VIII, IX and XII.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by January 31, 2013. Any party opposing the objections shall file a response by February 14, 2013. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: January 17, 2013